The issue before this court is whether the government can seize the entire corpus of a discretionary trust and thereby eliminate the rights of the other beneficiaries. The trust at issue in this case was created by the party, Jean Yarbrough's mother, Wanda Yarbrough. Indisputably, as is shown by the trust in the record, it was created during her life. And during her lifetime, she deeded what was the sole remaining property at the time the issues in this action arose, her homestead, into the trust. The deed is also part of the record. The trust is a discretionary trust, as it is known under least Texas law. Does it reflect who the attorney was assisting her in creating that trust? I know who the attorney is. I know- Who was the attorney who assisted her? It was a man named Charles Hunt, better known as Mickey Hunt, Dallas attorney. He did testify in the probate court proceeding, but that record's not before the court. Mr. Hunt, I think, is very experienced in trust matters. The discretionary trust is a trust vehicle by which the trustee is invested with the discretion to determine what, if anything, the beneficiary or beneficiaries receive from the trust. In other words, in this trust, the beneficiaries during the lifetime of the trust, which were Jean Yarbrough and Steve Miller, were not invested with a right to demand a particular distribution. Whether it be the income of the trust, or any percentage of the trust, or any given circumstances to demand that the trustee grant them certain rights under the trust. Texas law recognizes, therefore, that the beneficiary in such a trust has no right to compel the trustee to make a distribution. The government, pursuant to the Federal Debt Collection Practices Act, effectively steps into the shoes of the beneficiary, Jean Yarbrough in this case, as he is the restitution judgment debtor. In stepping into his shoes, they have the rights that he has. The government's power is expansive here. I mean, what happened in the settlement of the will contest with regard to the trust? The end result was that Regents' trustee, Regents' trustee resigned, and a new trustee was appointed. That was the only revision to the trust. The parties, by their agreement- I thought the parties agreed that the only asset of the trust would be sold. They did, or they consented to the trustee selling it. The trustee actually had contracts presented to him at the time of the settlement, and the parties agreed not to contest that that property be sold. And then they agreed on the trustee making a payment out of the trust to settle the trust estate litigation to the contesting party. And the remaining part was originally contemplated to be distributed by Regents, pursuant to instructions that I was going to give. When I told the government what the instructions were to be, which was that, and understand the settlement, was dictated on the record on the fly, and we didn't have all the details on our end worked out, I then informed the government that we were going to request Regents to distribute all of the funds to the other lifetime beneficiary, Steve Miller, and even when Mr. Miller swore to the government that he was not going to give any of those funds to Gene Yarbrough, they said if he got the funds, they would pursue him for a fraudulent transfer action. At which point, changed circumstances led to changed plans. The end result was that, of course, the money is now gone, but that a subsequent trustee was appointed, a Mr. Loveland, an attorney in San Antonio. And so that was the only revision to the trust language itself. Why didn't the execution of the Rule 11 agreement terminate the trust? Because a Rule 11 agreement is just that, it's an agreement. It's made enforceable by Texas Rule of Civil Procedure 11, thus the name. But Rule 11 agreements aren't super agreements, and they're not court orders, they are simply agreements. They can be enforced by a court, correct? It can be enforced by an action, by a party to the agreement, but not sui sponte by the court. And in fact, we went back to the court in this case to in effect modify, in one minor respect, the Rule 11 agreement, which instead of saying to shut down the trust, we requested the court to appoint a successor trustee, which we did. I know that language, it said on behalf of my clients, we're agreeing to a trial amendment for either scenario as you described, the trust will be terminated and dissolved and released of all further obligations as trustee. I'm sorry? Regents was released of any further obligations as trustee. Yeah, I understand that, and the trust will be terminated and dissolved. That was the original contemplation of the agreement, that the trust would be dissolved and the funds would go to Steve Miller. Contemplation of the agreement, it was agreed it was going to be dissolved? We had stated it was our intent to dissolve the trust. We, the beneficiaries of the trust, stated our intent to seek distributions from the trust. But the government, in effect, frustrated our ability to have a distribution from the trust to people who were entitled to it. And so instead, we petitioned the court, regents joined in our motion, or at least joined in the order, to continue the trust. What I'm not completely clear about is it appears to me that what you're content basically was that the government's busting a trust. And on the other hand, what we found out is that no, the parties themselves are fighting, and they settled out this deal to an agreement which dissolves the trust. So you want to settle your little contest, dissolve the trust, keep the money, then say the government can't break the trust. That doesn't make sense to me. Well, you understand, if the trust were dissolved by its terms, the money would go to Steve Miller or to the Miller family. That's what the trust says, and that part of the trust was never amended. The government's contention, in effect, in the litigation was that regardless of what we did with the trust, that in effect, they wanted to assert that really was a distribution to Gene Yarbrough and they would get it. Was the defendant in this suit a party to the settlement agreement? The defendant, Gene Yarbrough? Yes. Yes, sir. And was the trustee present? Yes, sir, and represented by counsel. So he agreed to dissolve the trust. Right, and subsequently agreed not to dissolve the trust. But what he represented to the court was that it would be dissolved in Rule 11. An agreement, I would counter, is not a representation to the court, it's simply an agreement dictated on the record. An agreement, like other agreements, that can be modified and changed. And the parties to the agreement modified the agreement and the court. They went back to, we went back to the court, the probate court. No, the sentencing was, the sentencing was a decade ago, I don't remember. The point is, well, of course that's true, but that's. Well, the complication with your argument that they modified it is, if Yarbrough modified it, that calls into sharp question this contention of yours that it is a pure discretionary trust. He has no power over it. And yet he's modifying it to have some go to Michael and the other modifications, well, the modification that monies will flow pursuant to your instructions. I disagree that what the Rule 11 agreement did was modify the trust. Well, did it adjust it so the trustee would make distributions according to your instructions, yes or no? The instructions were going to be given to the trustee. Did the modify the Rule 11 adjust it so that the trustee would be told to disperse monies as you said they should be? I disagree that that's a modification of the trust, because I could not give instructions that were contrary to the terms of the trust, which it was an irrevocable trust. Neither Mr. Yarbrough or Mr. Miller or Regents had the power to modify the trust. Now, there is provision under the Texas Trust Code to pick a new trustee. And the trust didn't have a- The Rule 11 agreement contemplate making Michael a beneficiary. No, that was a settlement of litigation by the trust. And the trust, what we, in effect, did is authorize the trustee to settle the litigation by making a payment. So they were settling a disputed litigation. It was not treated, or what should not have been treated, I don't know if it makes any tax implication, but as a distribution from the trust, it was a settlement of a lawsuit claim. Which a trustee, this trustee, as most trustees, is authorized to do. The claim was attacking the validity of the trust. I don't understand how your client, Steve Miller, still has anything to do with this situation. Why he has standing when he disclaimed any present or future interest? He didn't disclaim a future interest. He said he wasn't going to request a distribution from the trust. He didn't say, the agreement did not say, I waive or renounce my remainder interest in the trust. If he'd done that, his wife would be the remainder beneficiary of the trust, Janet Miller. And if she disclaimed, their children would be the remainder of the trust. What he said had not- You have an ownership interest in this trust, of your client. Well, both Mr. Miller and Mr. Yarbrough have an equitable interest in the trust. And the government can step into the shoes of our equitable interest. But that does not give them the right to A, seize all the funds of the trust for Gene Yarbrough's benefit, or any particular dollar amount, because Gene Yarbrough doesn't have a right to do that. In effect, if they were able to do that, they are busting the discretionary trust. Yeah, but the MDCPA contemplates exactly the term you just used, a future equitable interest. So your real concern is, does he have full future equitable interest as distinct from Miller? But you're not disputing the plain language of the FDCPA contemplates this exact type of property interest. It contemplates any property interest. Well, doesn't it explicitly say future and equitable interest? Right. And you just described Yarbrough's as a future equitable interest. But what is the equitable interest? It's not a, if I said future, let me clarify. Mr. Miller's interest and the Miller family's interest is future. No, I'm asking about Yarbrough. Okay. As to Yarbrough, he has a present interest in the trust, as any beneficiary does, to enforce the trust terms, to sue, to seek a new trustee, to protect the trust. He doesn't have an interest to compel a distribution to him in any dollar amount. Thus, he doesn't have an interest in the corpus. He doesn't have an interest in the income, and he doesn't have any interest in the visible interest. If he- Until it's dispersed. Until it's dispersed. And where is the corpus presently? It's in the hands of the restitution creditors. Okay, so it's been dispersed to escrow, and then to the clerk of the court, and then actually to the restitution victim? That is what I've been informed. Okay, so why wouldn't that alone be a disbursement? Well, it was done pursuant to a court order that we- The original, the court order compelled it into escrow? No. No. So why wouldn't the disbursement into an escrow be a disbursement out of the trust? Because the trustee sold the property, okay, those trustee regions sold the property, entered into an agreement with the government to hold the property at the title company, the cash, allegiance, until the government agreed to release it or there was a judgment. When the district court entered its judgment, the funds were released immediately by the escrow company to the government who told them- Right, but I'm talking about the trustee has sole complete authority to disperse it, did disperse it to the escrow. No, he doesn't have sole complete authority to disperse it. The trust says to whom he may disperse it. And that did not, he did not, what we did is had an intermediary allegiance that had the money before it delivered it to the trustee. The trustee said, like any banking arrangement in effect, you can hold my money for a while. But it was regions' money, regions' trustee. They did not give it to anybody. They did not give it to allegiance and they would not have been authorized by the trust to give it to allegiance. Regions was the party that controlled that money pursuant to an agreement they made with the government. That's what the escrow agreement was, an agreement to hold the money in escrow until the litigation was concluded. Where's the escrow agreement is in the record? It is. It is one of four documents that constitute the entire evidentiary record in this case. The Texas trust law, and I cited, well, I have two minutes. I would just say that I think the two most important cases in the record are the Butler case and the Texas Commerce Bank case. They both interpret discretionary trust, the Federal Debt Collection Procedures Act. While they're dealing with tax restitution orders, the law is the same. I mean, a tax levy and a restitution order, the government's position is just the same. And in both cases, the court said, when it's a discretionary trust, the government's stepping into the shoes of the beneficiary. In this case, Gene Yarbrough has the rights he does and no more. Since Gene Yarbrough couldn't compel a distribution, the government couldn't compel a distribution. The Rule 11 agreement did not require a distribution. The government has a variety of theories here about the capacity and other issues about the propriety of this trust, none of those were proven. Since there are no facts in the record, a judgment can't be supported on that basis. All right, thank you. You've saved some time for rebuttal. Ms. Callahan. May it please the court? This is not a trust busting case. There is one fact that dictates this case, and that fact is that that trust terminated. Now, everything that's happened since then has made it appear as if it did not terminate. That is simply not what happened here. When the Rule 11 agreement was entered into, the government was contacted. The government was asked to release its nominee lien in order to allow the sale to proceed in accordance with that Rule 11 agreement. That Rule 11 agreement was provided to the government as evidence of the settlement agreement. There's been some issue made as to why the government didn't enter into the will contest and probate action. The reason is, it was a family conflict, and the government allowed the family to decide it. It had been ongoing for years, and the government stayed out of it. However, when they entered into that agreement, and the trustee relinquished its rights, which it did, as demonstrated in that escrow agreement, it's 649 in the record. And it says, Regents Bank has entered into this agreement for the closing and funding of the transaction to proceed and waive any and all right, title, and interest to the property after the closing and funding of the transaction. There was never any doubt that that trust terminated. And once it terminated, the beneficiaries had full ownership rights. They were vested in those beneficiaries. Either or one could have requested that distribution. They were entitled to 45%. The government was willing to acknowledge that and to concede that. At some point thereafter, it became clear that now we're into an issue of the government's going to take this money. Then there's those allegations that the government coerced Miller and threatened him with a fraudulent transfer. That's not what happened. What about the waiver and the- And then we get on down the road, as this is all progressing, and he completely disclaims any interest. At that point, the only beneficiary remaining is Gene Yarbrough, the defendant. Can Miller disclaim the interests of the other Miller beneficiaries? What's your best authority for that? The wife. At that point, he's the only vested beneficiary. He is the present vested beneficiary. They were remainder beneficiaries under the trust. The trust had terminated. And contrary to what counsel says, it doesn't mean that the proceeds went to Miller. There were several avenues for that trust to terminate in the trust document. The trustee alone had the sole power to terminate it under several provisions. The provision that counsel refers to is that if Gene Yarbrough died, then the vested beneficiary would have been Steve Miller. But that's not what happened here. What happened is a settlement agreement occurred in probate court that terminated the trust. They divvied up the last remaining asset. Who is it that they, who when you say they? The parties to that probate litigation. They were the trustee who was there, the two co-beneficiaries, Miller and Yarbrough, and the brother who was the will contestant at that time. They were all parties to that action. They were all involved in that Rule 11 agreement. And then it was given to the government, and the government was asked to rely on it, to release it to lien, to allow the property to sell, and then move on. And then we get into the issue of, well, Miller's going to take all the proceeds, which just did not make any sense at that point, given other information that the government had. And the government said, in the record, that may constitute a fraudulent transfer, that you would deny everything to Gene Yarbrough, and Miller would take it all. Made absolutely no sense. And on top of that, Yarbrough, at that time, was also a vested beneficiary that trust had terminated. Under the Rule 11 agreement, he was one of the only ones remaining to even get the property. So the government could step into its shoes, his shoes, and as council conceded, it's exactly what we did. We asked, why wouldn't Yarbrough get at least some portion of that? And instead, all we're met with is Miller wants it all. And then down the road, Miller disclaims. So now the only one left standing is Gene Yarbrough, and that's where the government said, he's the only one left. He is entitled to the full corpus, and that's exactly where we are today. There's a whole lot of other things that were tangential to this. Quite frankly, none of them are relevant. The issue, if the trust is terminated, Yarbrough acquired full ownership rights. That's all that was left. And it was terminated by the Rule 11? By the parties to the probate action. Agreement, contract. Yes. So the two beneficiaries, the trustee who was directly involved, and then the will contestant, Michael Yarbrough, the brother. The government agreed to release its lend, and as I understand it, to allow the sale to go forward. But it releases lend so that the sale could be effectuated. Yes, Your Honor. So now they say that, well, King's X, we could keep the money, and the $3 million we owe the victims, too bad. Yes. How much restitution is still outstanding? There was 2.1 million, which the government did prove in its writ of garnishment, subtracting 342,000, which it acquired, so a substantial amount is remaining on that debt. And the amount has already been dispersed to the banks. They are the victims in that case, but it's- So you've been much more laser-like here than in the brief, and that's not a criticism of you, because the district court made alternate findings, but not to revive a more complicated area of law. But I'm just curious, when you say this is not a trust-busting case, would it be the government's position that if there were a pure discretionary trust, would you, under the FDCPA, be able to garnish in any way, mechanically and legally, that non-distributed amount of money? I think the law makes clear we would not, because our property interest is under state law. And to the extent that that beneficiary does not have a property interest, meaning that they can't request. It's solely in the discretion of the trustee. Okay, now had there not been a termination, there still seems to be a question as to whether this factually would be a discretionary trust. In as much as Yarborough and his attorneys seem to be adjusting it periodically for their favor. Is that correct or not? That is correct. And the central issue is still, did the trust terminate? They can modify it, because they entered into that Rule 11 agreement terminating it. These arguments, they came back, they all met. The modification, the motion that was submitted to the probate court, did not contain the signature of Fred Hartnett, who is attorney for Michael Yarborough. So it is disingenuous to say that the parties to the probate were all in line. They were not. When was the modification made, before or after release of the land? After, January of 2013. I've agreed with the government to government release this land and fluctuate the sale. Then the council opts this description of modification. It came after you released your land. And not only after we released the land, but even after council made its motion to quash. So we were in the thick of litigating and trying to resolve it when the modification was made. It was a carefully orchestrated scam in order to evade us. That's exactly what it was. Because all these modifications to the trust and the things that were done, were done after we were in the middle of discussion about it. It's even after Miller had already disclaimed. So October, Miller disclaims. In December, council moves to quash the writ, which has been in place for a while. And then in January, they move in the probate court to modify the trust and to appoint a successor trustee. But when was the Rule 11 agreement? April of 2012, or actually March 30th, 2012. Many, many months prior to that. All that was happening- There should have been no trust. Yes. When the trust was created, what was its asset? Was it a sold asset, the residence?  When the trust was created, there were, I believe, three or four assets. They were stock shares, dividends, I think a loan, a promissory note. The house was actually deeded to the trust in February of 2007. Okay. So what you were talking about here was the release of lend. The negotiations, what they wanted to do was to sell the house. And then that, so it was the proceeds for the sale of the house. What happened to the other asset? They were all, they were gone. Exactly what happened to them, we don't know from the record exactly. There were disbursements made. The bank never had those? They did have some of them, but Frost Bank was the trustee, the original trustee. Regions Bank was actually the successor trustee. And a lot of the assets were dissipated whenever Frost Bank was the trustee. Disbursement, we know that disbursements were made to Gene Yarbrough. Can you- Their contention is basically that they never terminated the trust.  Anyway, I guess we'll discuss. Can you just quickly recite the sequence of trustees? Yes, in February of 2007, Frost Bank was named as the trustee in the original. I believe it was in 2009 that Regions Bank became the successor trustee. And that's all there were two, Frost Bank and Regions Bank. Now, moments ago, opposing counsel mentioned a present trustee. Yes, and then after the litigation had commenced, another successor trustee was named as Daniel Leveland. But at that point, you're saying there's no trust left? No, there's no trust left. That was in January of 2013, the Rule 11 agreement was- And has that trustee intervened or taken any position? No, it's actually in the record. He wrote a letter to the court stating that he would not. And does the record contain evidence that Regions itself claimed that it had no present property interests of Yarbrough's, or is that- That would be the answer to the writ that Regions submitted. When they answered, they said they did not have anything currently in their possession, but then they expected to receive something to disperse to the beneficiaries once they received instructions from opposing counsel. And those instructions never came, admittedly, because the garnishment action stirred up things, if you will. That's exactly what happened. Well, the reason for such a long delay is we kept waiting and waiting for the instructions to come, and yes, the government had an interest. Because Yarbrough could receive the whole, but the only response we got is, well, Miller's going to take it all. And that wasn't accepted. In your brief, or is it in the district court order, a suggestion that opposing counsel would himself be the beneficiary of a disbursement? It was both in my brief and in the order- Could you explain that? Yes, there is an email from opposing counsel to me, stating that he was entitled to receive over $80,000 in attorney's fees from that disbursement, as well as there were some other attorney fees and a CPA involved. And the total amount was well over $100,000 that would be taken off the top and  So opposing counsel has a vested interest himself in the outcome. He has $100,000, at least now, in attorney's fees that he seeks from the sale proceeds of that house. Everybody gets paid but the government. Yes. Yes. And it's not really the government, it's the restitution order. Yes, and that's the other issue. This isn't done for the government's benefit. There are two banks that were defrauded by Gene Yarbrough. The emphasis is they received that money. What was the amount of the original order of restitution in the earlier criminal case? It was $2.1 million. And that's also, there was an allegation in the appellant brief that the government did not prove that. That statement is in the actual writ of garnishment. It's required under the FDCPA to be in there. But I would also note that the court clerk is actually the official bookkeeper of those records. One of the little twists is, does, and you may have answered this earlier, but comes back to Miller's wife and descendants. And so, if you could explain again your view on what's the effect of the Rule 11 agreement as determining a trust that describes that if Yarbrough dies, the principal goes to Miller. If Miller's not living, the principal goes to wife and others. Because that premise is based on the trust being in place. So once that trust was terminated, then the present beneficiaries, Yarbrough and Miller, were vested with the rights. They acquired full ownership rights once that trust terminated. The only thing left to do is to pay over the money. So the remainder beneficiaries are under the trust. The trust is no longer in existence. They no longer have an interest. The only two with an interest are Yarbrough and Miller. Miller disclaims the only one left is Yarbrough. I'm just curious, how old was Yarbrough when his mother set up the trust? I believe he was in his 50s. Because it's got that general spin thrift language in it about, you can disperse for education. And so it was just sloppily written. Yes. Yeah, okay. And you're not pressing the standing or waiver arguments you made at this point? You're urging us to go right to the merits? Yes. That the trust terminated. Great. If there are no further questions of the court, I will return my time. Thank you. We'll take it. All right, Mr. Pike, you have a few minutes in rebuttal. Yes, thank you. So the argument that the government says is that the trust terminated. And that is based on them, in effect, stepping in and trying to enforce a Rule 11 agreement in a way different than what any of the parties did. And different than what the court with jurisdiction, the probate court, did, which was clearly to appoint a successor trustee. The government blocked an attempt to actually follow the trust provision. Which said, when the trust terminates, the beneficiary of the trust is the Miller family. The government, through threat of litigation, dissuaded Mr. Miller from doing that. It was only after that, that he entered into an agreement saying that he would not seek a lifetime distribution from the trust. So, but that did leave the rest of his family and himself as remainder beneficiaries. So in effect, the government says they can take a position that they can enforce the interpretation of the Rule 11 agreement that the trust must distribute. The trust must be distributed to Gene Yarbrough. Because pursuant to the terms of the trust, and pursuant to what has occurred, the only way that Gene Yarbrough receives the property of the trust is if somebody makes a, a trustee makes a distribution to him. What's in the trust now? Well, at this moment, nothing. But what should be in the trust is the proceeds. What happened to the other proceeds? They were. But. This trust that was never disterminated. I'm not trying to be flip, I'm not trying to be flip Judge Higginbottom. No, no, I'm trying to understand. It's not in the record, and I have never done an accounting of the trust from the time that I've been involved, which has been extensive. I tried the case in the probate court. The only asset in the trust was the house. I'm not saying there weren't ever other assets, but it was at that time. But when it was sold, the funds were distributed to what, an alliance, an escrow? Allegiance. Allegiance, excuse me. Yeah. Why wasn't that the final distribution? Why wasn't that the end of it? They were the title company. What happened is the government placed a lien, which we requested them to release, because we said their trust doesn't, their lien doesn't cover the property of the trust. Regions entered an agreement, regions as trustee, entered an agreement with the government to allow them to release the lien so they could get, accomplish a sale, and have a liquid asset, cash. That was done, first of all, that's not an agreement that my clients entered into. Why did you need the government to release this lien? Well, they'd filed a lien, and so the, they'd filed a lien, and so the trustee and the title company would have felt more comfortable obtaining a release, and they did. You had to get the government to release this lien, and then, but in order to get them to release the lien, the, the record was this was being dissolved. The, the statement at the, the Rule 11 agreement at that time said unequivocally the trust would be terminated, and your explanation of that later was changed. But the, the government really did not understand it, released the lien upon the, the understanding that this, that this trust would be terminated. We didn't make a representation to the government to enter that release, and I think. Did you change, well, didn't you change the terms of this, of this agreement after the lien was released? After there, there was cash, after that point, and the government. Why didn't you change it before the government, why didn't you say they were not going to be terminated before the government released this lien? Because we proposed a valid way to resolve this, which was to distribute the funds to. But they want to release the lien, right? And you couldn't have gotten your money, is that, am I missing something? Steve Miller should have received the money, because that's the instructions that we gave, but the government threatened to sue him. The change in circumstance wasn't that the release was entered, because it really didn't prejudice the government's situation at all. Because they had, in effect, a lien on cash. The change came when they said, we're going to sue Steve Miller whether he gets his property and grant it. I mean, understand, he swore to the government, in writing, that he was not going to give this property to Gene Yarbrough. And they still said, we're going to sue you for fraudulent transfer. Only then did we change what we were going to do with this trust. Until then, we were going to distribute it pursuant to its terms. Now, we've said, we're going to continue it on. Well, how did you, having induced the government to, wittingly or unwittingly, to release his lien, how do you take advantage of the release of the lien and then renege on the part of the bill? We didn't induce the government, first of all. I'm sorry? We did not induce the government to release the lien. Secondly, the government's position was not prejudiced by the lease to the lien, because they had an escrow agreement that held the funds in place until they got an order on the garnishment. I didn't need the release. Excuse me? Why did you need the release? Because I thought that you couldn't make the deal without it. No one, the bank, no one else is going to buy into this until the government releases its lien. The purchaser would not have gotten title of the property, but all that happened at the point of the release of the lien is the conversion of the asset from real property to cash. No way was the government's rights diminished to assert their rights against the cash, because that's what the agreement said. If the order of the court is that the government gets the cash, it got the cash. What you're saying is that you changed the terms of the deal after the government released its lien, but they weren't hurt by it. They weren't hurt by it at all. I mean, they didn't have a right to it before. They don't have a right to it later. And the release of the lien did not change or diminish their rights. All right. Thank you.